**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**JAKE S. SHIRLEY,**

**Plaintiff,**

**v.**

**PARADOXUM GAMES, INC.,**
**a Delaware corporation, and**
**TIMOTHY J. KIM,**

**Defendants.**

Case No. ________________

# COMPLAINT

COMES NOW Plaintiff Jake S. Shirley, by and through the undersigned counsel, and for his Complaint against the Defendants, alleges and states as follows:

## PARTIES

1. Plaintiff Jake S. Shirley ("Shirley") is an individual who resides in Fairfax County, Virginia.

2. Defendant Paradoxum Games, Inc. ("Paradoxum" or the "Company") is a Delaware corporation with its principal place of business at 1851 Alexander Bell Drive, Suite 405, Reston, Virginia 20191.

3. Defendant Timothy J. Kim ("Kim") is an individual who resides in Fairfax County, Virginia.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Count I pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because that claim arises under the Copyright Act of 1976, 17

U.S.C. § 101 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over the remaining claims (Counts II through V) pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Count I that they form part of the same case or controversy under Article III of the United States Constitution.

5. This Court has personal jurisdiction over Defendants because both Defendants are residents of and domiciled in Virginia within this District. Defendant Paradoxum Games, Inc. maintains its principal place of business in Reston, Virginia, Defendant Timothy Kim resides in Fairfax County, Virginia, and the claims asserted arise out of their contacts with and conduct in this District.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because both Defendants reside in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue for the copyright claim is also proper under 28 U.S.C. § 1400(a).

## FACTUAL ALLEGATIONS

### A. Shirley and Kim Form a Partnership to Develop TDS

7. In early 2017, Shirley and Kim met online through Discord.

8. In early 2018, Shirley and Kim began collaborating on video games on the Roblox platform, including "Ninja Simulator" and later "Woodfields."

9. By early 2019, Shirley and Kim were developing Woodfields under a studio called "Bark Woof" (not a legal entity, but a group structure on Roblox).

10. Roblox is a cloud-based gaming platform where users stream games rather than downloading them.

11. In or before June 2019, Kim created a tower defense game called "Tower Defense Simulator" ("TDS") as a high school computer science project and launched it on Roblox.

12. TDS quickly gained traction, reaching approximately 15,000 to 20,000 players.

**B. The 30% Revenue Partnership Agreement**

13. In June 2019, as TDS grew in popularity, Shirley approached Kim and explained that TDS had significant potential but needed to be scaled, something Kim could not accomplish alone.

14. Shirley offered to partner with Kim in this venture in exchange for a 30% share of all revenue from TDS.

15. Kim accepted, and Shirley was assigned 30% of all TDS revenue through the Roblox platform's revenue-sharing mechanism.

16. This partnership agreement (the "Partnership Agreement") was formed verbally between Shirley and Kim over Discord text and voice communications.

17. From late 2019 through 2022, Shirley made significant contributions to the TDS source code. During 2020 and 2021, Shirley's "commits" (individual additions or modifications to the source code) represented 71% and 80%, respectively, of all TDS source code authorship.

18. Under the Partnership Agreement, Shirley received 30% of all gross TDS revenue directly through the Roblox Developer Exchange ("DevEx") program, not through direct payment from Kim.

19. Under the DevEx program, when players purchased items in TDS using Robux (Roblox's virtual currency), Shirley and Kim each exchanged their respective shares of Robux for U.S. dollars through the Tipalti portal.

20. The developer exchange rate was 1 Robux = $0.0035 USD.

21. TDS initially generated approximately $20,000 per month in revenue. In 2019, Shirley personally earned approximately $200,000 in Partnership distributions.

**C. Shirley's Share in the Partnership Increased to 40%**

22. Around Christmas 2020, Shirley's contributions increased drastically due to team departures and operational demands.

23. Shirley informed Kim that if Kim wanted Shirley to continue contributing at this increased level, Shirley's partnership interest must be raised from 30% to 40%.

24. Kim agreed, and the parties increased Shirley's share to 40% of all game revenue, changing the partnership profit split from 30/70 to 40/60.

25. As the team grew to approximately eight people, Shirley recruited additional talent, including graphics and music producers.

**D. Formalization of Operations and Move to Virginia**

26. In 2020, as TDS revenue increased substantially, Shirley and Kim each formed S corporations to manage their assets and reduce personal tax liability.

27. Shirley formed Shirley & Company, LLC, and Kim formed Paradoxum Studios, LLC, each electing S corporation tax treatment.

28. These entities were used solely to facilitate Shirley's and Kim's respective Partnership distributions.

29. In summer 2021, Shirley and Kim agreed to pause their pursuit of higher education and move in together to build TDS and grow the Partnership.

30. They split rent on an apartment in Tysons Corner, Virginia, initially signing a three-month lease, then later moving into a penthouse apartment together.

**E. Failed Discussions on Changing the Partnership**

31. In late 2021, Shirley and Kim brought on two additional software engineers as the team expanded.

32. With the growing team, Kim and Shirley discussed whether to convert from a partnership to a corporation or LLC.

33. Unable to agree on a new structure, they continued operating as a partnership.

34. Around summer 2022, Kim formed Paradoxum Games, Inc., a C corporation solely owned by Kim.

35. The partners also modified the payment structure: instead of Shirley receiving 40% of gross revenue (with Kim using the remainder to pay team members), they would pay team members first and then split the net revenue 40/60.

36. In late 2022, a dispute arose between Shirley and Kim regarding the Partnership and their respective roles.

37. During this period, Shirley and Kim leased office space and brought on additional team members.

38. Kim attempted to have Shirley sign an "executive employment agreement," which Shirley refused because it was inconsistent with the Partnership Agreement. Shirley was not, and had never been, an employee of Kim, the Partnership, or any other entity.

39. The proposed agreement was never executed.

**F. Partnership Payroll Mechanisms and Roles**

40. Shirley continued to receive 40% of net revenue from the partnership until the events giving rise to this action.

41. Once the C corporation was in place, Shirley and Kim began funding a third Roblox account with approximately $50,000 worth of Robux every two to three months to facilitate payroll.

42. Shirley had access to the Chase bank account associated with that payroll Roblox account, allowing him to monitor transactions and confirm he was receiving his share.

43. Shirley and Kim continued to receive Partnership distributions, which they caused to be paid into their respective S corporations. Beginning in January 2021, Shirley's distributions were paid to Shirley & Company, as reflected in the Payout Records.

44. This continued until September 2023. Shirley's final distribution (approximately $92,749) was paid on or about September 25, 2023. When Shirley received it, he had no idea it would be his last.

45. In fall 2023, tensions arose among Shirley, Kim, and other team members, including Jay Moncada.

46. In late November 2023, Kim and Shirley met to discuss unwinding the Partnership, a process that would entail paying Shirley the fair value of his 40% interest and devising an orderly transition plan, which they hoped to complete by approximately June 2024.

47. No agreement was ever reached.

### G. Kim's Scheme to Oust Shirley and Take his 40% Partnership Interest

48. On December 6, 2023, between approximately 12:00 and 1:00 p.m., Kim called Shirley, claimed it was urgent, and asked Shirley to transfer ownership of the GitHub account (a cloud-based platform used to store and manage TDS source code) to Kim.

49. Shirley complied and transferred the GitHub account to Kim.

50. Between approximately 5:00 and 6:00 p.m. that same day, Kim removed Shirley from all company systems, including Slack, Google Workspace, and the Roblox group.

51. At 6:06 p.m. on December 6, 2023, Shirley received an email from Kim stating: "This e-mail will confirm that, effective immediately, you are relieved of any duties or obligations to Paradoxum Games and your employment is hereby terminated."

52. Shirley was not, and had never been, an employee of Paradoxum Games. This phony "termination letter" was part of Kim's scheme to convey all Partnership assets (owned 60/40 by Kim and Shirley by virtue of their respective interests in the Partnership) to Paradoxum Games (owned 100% by Kim). With this scheme, Kim sought to simply *take* Shirley's 40% interest in the Partnership, TDS, and its intellectual property without paying him anything.

53. Kim attached a purported draft "separation agreement" to his December 6, 2023, email. Shirley, who was never an employee of either Defendant, refused to sign this document.

54. Kim further stated in the email that Paradoxum Games had retained legal counsel and set up audit logging, and instructed Shirley not to access, alter, or interfere with any software, systems, services, or property of Paradoxum Games.

55. The email also stated that Shirley's key fob had been deactivated and instructed him not to attempt to access the Company's offices.

**H. Nature of Shirley's Partnership Contributions and Role**

56. From June 2019 through December 6, 2023, Shirley made substantial contributions to the creation, development, operation, and growth of TDS and the Partnership.

57. Shirley's contributions included software development, management of other developers, talent recruitment, business operations, technology infrastructure management, and other functions across multiple areas.

58. In his managerial capacity, Shirley oversaw what was shipped to the codebase, led the team of software engineers he brought on, directed which features required attention, and managed their review and deployment.

59. Shirley's role evolved over the life of the Partnership. By 2022-2023 his primary responsibilities had shifted to managing the engineering team, overseeing technology infrastructure, and handling business operations, all essential functions for the success of TDS.

60. Shirley was also integral to major creative decisions.

61. Shirley's shift from direct development to management and infrastructure reflected the natural evolution of the Partnership as TDS grew in scale and complexity. These management contributions were no less valuable than direct coding and were essential to the Partnership's continued growth and profitability.

62. Throughout the Partnership, Shirley and Kim operated as business partners sharing profits, first under a 30/70 split and then under a 40/60 split of net revenue after payroll.

63. Neither Shirley nor Kim treated their relationship as employer-employee; they operated as co-founders and partners in the TDS Partnership.

64. Shirley was never treated as an employee of the Partnership or Paradoxum Games. He never received a W-2 from the Partnership, Paradoxum Games, or any predecessor entity, and he never received wages or a salary. Instead, he received Partnership distributions commensurate with his ownership percentage.

## CLAIMS FOR RELIEF

### COUNT I — CO-AUTHORSHIP OF COPYRIGHT
**(Paradoxum Games, Inc. and Timothy Kim)**

65. Shirley realleges and incorporates by reference the preceding paragraphs.

66. This cause of action requires the construction and application of the authorship and ownership provisions of the Copyright Act, including 17 U.S.C. §§ 101 and 201(a), and seeks declaratory relief under 28 U.S.C. §§ 2201 and 2202.

67. The work at issue is the computer software program known as TOWER DEFENSE SIMULATOR (the "Work"), including its underlying source code, object code, and related revisions and versions, which constitutes an original work of authorship fixed in a tangible medium of expression within the meaning of 17 U.S.C. § 102(a).

68. During his tenure as a partner, Shirley conceived, wrote, and contributed substantial, original, and copyrightable expression to the TDS source code, including substantial portions of the game-play code. Each contribution was independently copyrightable and represented more than a mere idea, direction, or suggestion.

69. At the time Shirley made his contributions, he intended those contributions to be merged into inseparable or interdependent parts of the unitary whole.

70. Accordingly, the Work is a "joint work" within the meaning of 17 U.S.C. § 101, and Shirley is a joint author of the Work.

71. As a joint author, Shirley is a co-owner of the copyright in the Work as a tenant in common, with an undivided ownership interest in the whole, pursuant to 17 U.S.C. § 201(a).

72. Shirley's contributions were not "works made for hire" within the meaning of 17 U.S.C. § 101. Shirley was a partner, not an employee acting within the scope of employment, and he never executed any written instrument agreeing that his contributions would be works made for hire or assigning his authorship or ownership interest.

73. Copyright registration is not a prerequisite to this claim. The registration requirement of 17 U.S.C. § 411(a) is a precondition to infringement actions and does not limit

this Court's jurisdiction over, or Shirley's right to obtain, a declaration of co-authorship and co-ownership. Shirley does not seek to enforce the exclusive rights set forth in 17 U.S.C. § 106; he seeks only a determination of his status as an author and co-owner of the Work.

74. Paradoxum and Kim have denied or failed to acknowledge Shirley's status as a joint author and co-owner of the Work, and have asserted or claimed authorship and/or exclusive ownership of the Work and its copyright.

75. An actual, present, and justiciable controversy exists between Shirley and Defendants concerning their respective rights in the authorship and ownership of the Work.

76. Shirley has no adequate remedy at law and is entitled to a declaration of his rights pursuant to 28 U.S.C. § 2201 to resolve this controversy.

**COUNT II — BREACH OF ORAL CONTRACT**
**(Timothy Kim)**

77. Shirley realleges and incorporates by reference the preceding paragraphs.

78. In June 2019, Shirley and Kim entered into a valid oral contract establishing a partnership whereby Shirley would partner with Kim in developing the TDS business in exchange for his Partnership share of 30% of all revenue.

79. This Partnership Agreement is evidenced by the parties' course of performance over multiple years, Kim's assignment of a 30% revenue share to Shirley through the Roblox platform, and Shirley's receipt of substantial payments pursuant to this arrangement.

80. Around Christmas 2020, the parties modified the Partnership Agreement to increase Shirley's share to 40% in consideration of his increased contributions.

81. The agreement was further modified in or around 2022 to provide that Shirley would receive 40% of net revenue after payroll, rather than 40% of gross revenue.

82. Shirley fully performed his obligations under the Agreement by providing substantial services to develop, operate, manage, and grow TDS and Paradoxum Games from June 2019 through December 6, 2023.

83. The Partnership Agreement did not provide for "termination" of either partner; it contemplated ongoing revenue sharing and continued mutual involvement in the business.

84. Kim breached the Partnership Agreement by terminating Shirley's access to the business and ceasing all revenue-sharing payments on December 6, 2023, without paying Shirley the fair value of his 40% Partnership interest.

85. Kim also breached, and continues to breach, the Partnership Agreement by failing to pay Shirley his 40% share of net revenue for each month from October 2023 to present.

86. As a direct and proximate result of Kim's breach, Shirley has suffered damages including:

i. Lost Partnership distributions from October 2023 to present;

ii. The fair value of Shirley's lost 40% interest in the Partnership at the moment immediately preceding the breach.

The amount of damages, expected to exceed $35,000,000, will be established at trial based on TDS revenue data and the fair value of Shirley's 40% interest in the Partnership.

**<u>COUNT III — UNJUST ENRICHMENT</u>**
**(Paradoxum Games, Inc. and Timothy Kim)**
(*plead in part in the alternative to Count II*)

87. Shirley realleges and incorporates by reference the preceding paragraphs.

88. Shirley conferred substantial benefits upon Defendants by providing services from June 2019 through December 6, 2023, that contributed to the development, operation, growth, and profitability of TDS and Paradoxum Games.

89. These benefits included software development, management of development teams, talent recruitment, technology infrastructure development and management, business operations oversight, feature development direction, and other substantial contributions.

90. Defendants received and retained these benefits.

91. As a result of Shirley's contributions, TDS generated substantial revenue, from which Defendants have profited and continue to profit.

92. Defendants' retention of the benefits of Shirley's work without providing Shirley his agreed-upon share of revenue for October 2023 to present, pursuant to the Partnership Agreement, is unjust.

93. Defendants' retention of Shirley's 40% partnership interest without compensation is also unjust.

94. Under principles of equity and good conscience, Defendants should not be permitted to retain the benefits of Shirley's partnership interest or his contributions without compensating him for the value conferred.

95. As a direct result of Defendants' unjust enrichment, Shirley has suffered damages in an amount to be determined at trial, representing the value of benefits conferred upon Defendants for which he has not been compensated. These amounts are expected to exceed $35,000,000.

## COUNT IV – FRAUDULENT CONVEYANCE
**(Paradoxum Games, Inc. and Timothy Kim)**

96. Shirley realleges and incorporates by reference the preceding paragraphs.

97. At all times relevant to this Count, Shirley owned valuable property consisting of a 40% ownership interest in the Partnership and through this interest a 40% interest in all assets

of the Partnership, including: TDS and its related IP and revenue streams, and all of the Partnership's other property – real and personal, tangible and intangible.

98. On or about December 6, 2023, Kim fraudulently conveyed all Partnership assets to Paradoxum Games (which Kim solely owns), without providing any consideration to Shirley. Kim stripped all value from the Partnership (which Kim and Shirley owned 60/40) and transferred it to an entity Kim owns 100%, effectively taking Shirley's 40% interest without paying him anything.

99. At the time of these transfers on and after December 6, 2023, Shirley was a creditor of Defendants.

100. Specifically, Defendants owed Shirley:

i. His 40% share of net revenue for October and November 2023, which had not been paid; and

ii. His ongoing 40% partnership distributions as a co-owner of the TDS business venture.

101. The transfer of Shirley's partnership interest was made with actual intent to hinder, delay, or defraud Shirley in collecting the debts owed to him.

102. The actual intent to defraud is evidenced by numerous badges of fraud, including:

i. The transfer was to an insider: Kim and the Company he controls;

ii. Shirley retained possession or control of the property transferred only until December 6, 2023, when he was abruptly locked out;

iii. The transfer encompassed substantially all of Shirley's partnership interest and business-related assets;

iv. Defendants removed Shirley from the business;

v. Defendants terminated Shirley's access and control;

vi. Shirley received no reasonably equivalent value for his partnership interest or property;

vii. Shirley lost his income stream;

viii. The transfer occurred shortly after Defendants failed to make the October and November 2023 Partnership payments; and

ix. Defendants removed assets from Shirley's possession to hinder or delay collection of his debt.

103. The conveyances and transfers described above were made with intent to delay, hinder, or defraud Shirley in violation of Va. Code Ann. § 55.1-400.

104. The transfers are voidable as to Shirley pursuant to Va. Code Ann. § 55.1-400.

105. Alternatively, the transfers are voidable pursuant to Va. Code Ann. § 55.1-401, as they were made without valuable consideration while Defendants owed debts to Shirley.

106. Pursuant to Va. Code Ann. § 55.1-402, Shirley is entitled to bring this action to avoid the fraudulent conveyances and obtain relief with respect to the transferred property.

107. As a direct and proximate result of Defendants' fraudulent conveyances, Shirley has suffered damages including:

i. Loss of revenue share payments from October 2023 forward; and

ii. Loss of the present and future economic value of his 40% partnership interest in the TDS business venture.

**COUNT V — CONVERSION**
**(Paradoxum Games, Inc. and Timothy Kim)**

108. Shirley realleges and incorporates by reference the preceding paragraphs.

109. Shirley and Kim formed a Partnership in June 2019 under which Shirley received a defined percentage of all TDS revenue: initially 30%, increased to 40% around Christmas 2020, and later modified to 40% of net revenue after payroll around summer 2022.

110. The Partnership was a joint venture for the development, operation, and monetization of TDS.

111. Shirley had a superior right to possession of specific, identifiable sums representing his 40% share of TDS net revenue from summer 2022 forward.

112. The parties implemented their revenue-sharing arrangement through Roblox's revenue-sharing and group-payout mechanism. Under this system, a defined percentage of TDS revenue was automatically allocated to Shirley's Roblox account, and Shirley exchanged that Robux for U.S. dollars through DevEx via the Tipalti portal.

113. Shirley's 40% share is specifically identifiable from the Roblox platform's audit logs, transaction records, and the Tipalti payout records, which documented each distribution to Shirley over approximately four and a half years from June 2019 through September 2023.

114. These platform records, together with the parties' consistent course of performance (under which Shirley received his 40% share for approximately three years without interruption), constitute documented evidence of Shirley's property interest in the revenue proceeds, including his entitlement to immediate possession of sums allocable to his 40% share.

115. Shirley's 40% allocation is further documented by the Roblox Corporation Payment Details Reports (the "Payout Records"), which memorialize each DevEx distribution paid to Shirley through the Tipalti portal. The Payout Records reflect no fewer than 43 distributions from August 2019 through September 2023 (paid to Shirley individually through

December 2020 and, beginning in January 2021, to Shirley & Company), totaling approximately $5,482,347.

116. From October 2023 through the present, Defendants have continued to operate TDS and generate substantial revenue, collecting and retaining the entirety (including Shirley's 40% share) for their own use and benefit.

117. The total net revenue generated by TDS from October 2023 to present is within Defendants' exclusive possession and control and will be established through discovery.

118. Defendants intentionally exercised unauthorized dominion and control over Shirley's share of TDS revenue by: (a) unilaterally removing Shirley from the Roblox group-payout system; (b) reallocating his 40% share to themselves; (c) ceasing all distributions to Shirley; and (d) continuing to receive and retain amounts rightfully belonging to Shirley.

119. Defendants' removal of Shirley from the Roblox group-payout allocation did not extinguish his ownership interest in his defined share of TDS revenue.

120. Defendants had actual knowledge of Shirley's right to 40% of net TDS revenue, having honored that arrangement through consistent distributions for approximately three years.

121. Any demand for return or payment of Shirley's partnership distributions would have been futile.

122. To the extent the Court requires Shirley's interest to be evidenced by specific documents, his defined share of TDS revenue is evidenced by and merged with specific writings, including the Payout Records, the parties' written Discord communications confirming the revenue-sharing arrangement, and the Roblox platform's group-payout configuration records.

123. Defendants' conduct was willful, intentional, and in knowing derogation of Shirley's ownership rights.

124. As a direct and proximate result of Defendants' conversion of Shirley's partnership distributions and revenue proceeds, Shirley has suffered damages including:

i. His 40% share of net TDS revenue for October 2023, November 2023, and each month from December 2023 through the present;

ii. The fair value of Shirley's 40% interest in the ongoing TDS revenue stream as of December 6, 2023;

iii. Such other amounts as may be proven at trial, which together with the foregoing are expected to exceed $35,000,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jake S. Shirley respectfully requests that this Court enter judgment in his favor and against Defendants Paradoxum Games, Inc. and Timothy Kim, and award Plaintiff the following relief:

A. On Count I (Co-Authorship of Copyright), a judgment declaring that Shirley is a joint author of the Work within the meaning of 17 U.S.C. § 101; that Shirley is a co-owner of the copyright in the Work as a tenant in common, holding an undivided ownership interest, pursuant to 17 U.S.C. § 201(a); that Shirley is entitled to an accounting of all profits derived by Paradoxum and Kim from exploitation of the Work; and such other relief as the Court deems just and proper.

B. On Count II (Breach of Contract), compensatory damages in an amount to be determined at trial, including:

i. Unpaid Partnership Distributions from October 2023 to present in an amount to be proven at trial and expected to exceed $10,000,000;

ii. The fair value of the Plaintiff's interest in the Partnership in an amount to be proven at trial and expected to exceed $25,000,000.

C. On Count III (Unjust Enrichment), restitution in an amount equal to the value of benefits conferred upon Defendants for which Plaintiff has not been compensated, and, in the alternative to Count II, restitution awarding Plaintiff the same relief requested in Count II.

D. On Count IV (Fraudulent Conveyance), set aside the fraudulent conveyances and recover the property fraudulently conveyed, including Shirley's 40% partnership interest, or its value.

E. On Count V (Conversion of Partnership Distributions and Revenue Proceeds), compensatory damages in an amount to be determined at trial, including Shirley's 40% share of net TDS revenue from October 2023 to present and the fair value of his interest in the ongoing revenue stream, expected to exceed $35,000,000.

F. An accounting of all revenues, expenses, and distributions related to TDS and Paradoxum Games from October 2023 forward.

G. Reasonable attorneys' fees and full costs against Defendants, including (i) on Count I (Co-Authorship of Copyright), reasonable attorneys' fees and full costs pursuant to 17 U.S.C. § 505; and (ii) on Count IV (Fraudulent Conveyance), reasonable attorneys' fees pursuant to Va. Code Ann. § 55.1-403 for bringing this action to avoid the fraudulent conveyances.

H. Such other and further relief as the Court deems just and proper.

September 18, 2026

Respectfully submitted,

**JAKE S. SHIRLEY**

By: /s/ Jason E. Ohana
Jason E. Ohana (VSB No. 82485)
Jacob C. DeRue (VSB No. 100469)
Robert J. Kenney (VSB No. 27668)
Willcox & Savage, P.C.
8201 Greensboro Drive, Suite 1001
McLean, Virginia 22102
(703) 550-6354
(757) 628-5566 Facsimile
johana@wilsav.com
jderue@wilsav.com
rkenney@wilsav.com

*Counsel for Plaintiff*